UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

R.R. T.,

          Petitioner,

      v.

MARKWAYNE MULLIN, et al.,

          Respondents.

No. 2:26-cv-03856-VBF-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I.   SUMMARY

Petitioner R.R.T. ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California. In this habeas action, Petitioner challenges the legality of her re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking her liberty without notice, without a hearing, and without any opportunity to be heard on whether she poses a danger or flight risk. Petitioner argues that by releasing her on an order of her own recognizance ("OREC") after determining that she was not a danger nor a flight risk, U.S. Customs and Border Protection ("CBP") conferred upon her a freedom from

physical restraint protected by the Due Process Clause, and that this liberty interest could not be withdrawn absent constitutionally adequate procedural safeguards.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on February 24, 2026—without notice, justification, or evidence of changed circumstances—violated due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner represents that she is a 64-year-old native and citizen of El Salvador. (Dkt. No. 1 ¶22.) Petitioner asserts that she entered the United States on or about September 2024 at the San Ysidro, California Port of Entry through a pre-scheduled CBP One appointment. (Dkt. No. 1 ¶23.) Petitioner contends that, after waiting in Mexico for approximately six to seven months to receive this appointment, and after approximately six days in detention pending CBP's standard background checks, CBP released Petitioner from custody under an OREC. *Id*. Petitioner asserts that she began building a life in the United States and settled in the South Gate neighborhood of Los Angeles with her family. *Id*. Petitioner represents that she began building community, developing close friendships, and started her own business of making and selling food. *Id*.

Petitioner asserts that upon her release in September 2024, ICE enrolled her in an Intensive Supervision Appearance Program ("ISAP"). (Dkt. No. 1 ¶24.) Petitioner represents that over the next year and a half she strictly adhered to her reporting conditions. *Id*. Petitioner contends that to her knowledge, she never missed a check-in with immigration authorities, did not violate any

conditions of her OREC, and she has no criminal history. *Id.*

Petitioner asserts that on February 24, 2026, she was re-detained when she appeared at the ISAP office in Los Angeles, California for her regular check-in. (Dkt. No. 1 ¶26.) Petitioner represents that she was not provided with any explanation for her arrest, afforded any process to contest her detention, nor offered any opportunity to be heard prior to her re-detention. *Id.* Petitioner asserts that she has been in immigration detention since such time. *Id.*

Petitioner represents that over the approximately six weeks of detention at Adelanto ICE Processing Center, she has developed numerous health issues. (Dkt. No. 1 ¶30.)  Petitioner contends that she has developed diabetes, high blood pressure, allergies, and she also has been experiencing dizziness and shivering due to cold temperatures, difficulty breathing, and difficulty sleeping. *Id.* Petitioner asserts that Respondents have provided no evidence of an individualized finding that Petitioner is a flight risk or danger to society. (Dkt. No. 1 ¶29.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on April 10, 2026. (Dkt. No. 1.) Respondents filed their Response (the "Response") on April 17, 2026. (Dkt. No. 10.) Petitioner filed a Reply (the "Reply") on April 17, 2026. (Dkt. No. 11.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.    DISCUSSION

Petitioner argues that her re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked her conditional liberty at a routine check-in without providing notice, without a pre-deprivation hearing, and without any opportunity to contest whether she posed a flight risk or a danger to the community. Petitioner therefore seeks immediate release, arguing that Respondents' actions

3

contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents do not address Petitioner's claims. Respondents, in their Answer, state that they "are not presenting an opposition argument at this time." (Dkt. No. 10.) The Court notes this position but independently evaluates Petitioner's claims on the merits.

### A. The Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

### B. Petitioner's Detention Violates Due Process.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91. When CBP released her on an OREC after determining that she was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise

4

recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that her re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents deprived her of the ability to contest whether she posed a danger or flight risk before revoking her conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields

significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking her release and re-detaining her absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts she lived free from physical restraint, complied with the conditions of her release, built ties to the community, developed close friendships, started her own business of making and selling food, and incurred no criminal charges or other violations of the law. (Dkt. No. 1 ¶23.) While Petitioner remained subject to the conditions of her ISAP during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't,*

6

864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's compliant period of release, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining her freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). *See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

### 2. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to articulate any change in circumstance preceding Petitioner's re-detention creates a significant risk of erroneous deprivation. Respondents provided no pre-deprivation notice, hearing, or opportunity for Petitioner to challenge the basis for revocation of her release. Additionally, DHS identified no change in circumstances between Petitioner's grant of release and her re-detention on February 24, 2026. Both *Matter of Sugay* and *Saravia*

7

require materially changed circumstances before DHS may revoke a prior release determination. *Sugay*, 17 I. & N. Dec. at 640; Saravia, 280 F. Supp. 3d at 1194–97. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet nothing in the record suggests that Petitioner's continued release threatened either interest at the time of her re-detention on February 24, 2026.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's release in September 2024 and her re-detention on February 24, 2026.   There are no allegations of criminal conduct, no supervision violations, and no new facts in the record that would lead a reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of her re-detention on February 24, 2026. As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior release determination absent such materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia*, 280 F. Supp. 3d at 1196–97.

Second, the procedure employed here creates a substantial risk of error. Petitioner alleges that she was re-arrested at a routine ISAP check-in. As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a materially similar re-detention at a routine appointment without prior notice, likewise concluded that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

Petitioner asserts that CBP released her from custody under an OREC, and that she complied with all conditions of her release and did not violate any law or condition of her ISAP. (Dkt. No. 1 ¶23.)  During this period of release, Petitioner asserts that she appeared for all ISAP check-ins, built ties to the

8

community, developed close friendships, started her own business of making and selling food, and incurred no criminal charges or other violations of the law. (Dkt. No. 1 ¶23.) The record reflects that throughout this entire period, Respondents repeatedly determined that Petitioner could remain safely in the community. *Id.* Yet despite Petitioner's unbroken record of compliance, Respondents provided no advance process to assess whether revoking her release would further the permissible purposes of immigration detention. Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community.

Courts considering materially similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly

held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to re-detention. Nor do Respondents identify any individualized risk posed by Petitioner at the time of her re-arrest. Under *Mathews*, the Government's interest in bypassing pre-deprivation process in these circumstances is minimal.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary

10

detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on February 24, 2026, without adequate pre-deprivation process, violated due process and that she should be released forthwith.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release subject to conditions of supervision that existed prior to her detention on February 24, 2026, along with her personal belongings, including her identification, passport, work permits, and other documentation, and preventing her re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine her prior to her re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED:   May 1, 2026

_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

11